IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

OPHELIA AZRIEL DE'LONTA,           )
                 Plaintiff,        )
                                   )
v.                                 )        Civil Action No. 7:11CV00257
                                   )
GENE JOHNSON, Director,            )
VIRGINIA DEPARTMENT OF             )
Corrections, et al.,               )
                 Defendants.       )

## NATURE OF THIS ACTION

1.   This is a civil rights action under U.S.C. § 1983 arising
out of the deliberately indifferent denial of adequate medical
treatment, alleging cruel and unusual punishment and denial of
due process, in violation of the Eighth and Fourteenth Amendments
to the Constitution of the United States.

2.   Plaintiff Ophelia Azriel De'lonta ("De'lonta") is in the
custody of the Virginia Department of Corrections ("VDOC") under
the control of defendant Gene Johnson ("Johnson").

3. De'lonta has been diagnosed with Gender Identity Disorder
("GID"), a condition which in her case has created a serious need
for medical treatment.

PARTIES

4.   At all times relevant hereto, plaintiff Ophelia Azriel
De'lonta has been a prisoner in the custody of the Virginia
Department of Corrections.

5.   Defendant Gene Johnson was, at all times relevant hereto,
Director of the Virginia Department of Corrections.

6.   Defendant Fred Schilling was, at all times relevant
hereto, the Director of Health Services for VADOC and final policy
maker.

7.   Defendant Meredith R. Carey was, at all times relevant
hereto, the Chief Psychiatrist for VADOC, primary caregiver for
De'lonta, and final policy maker.

8.   Defendant Gary L. Bass was, at all times relevant hereto,
the Chief of Operations for VADOC and final policy maker.

9.   Defendant W.P. Rogers was, at all times relevant hereto,
Assistant Deputy Director of Operations for VADOC and final
policy maker.

10.   Defendant Gerald K. Washington was, at all times relevant
hereto, Regional Director Central Regional Office for VADOC and
final policy maker.

11.   Defendant Eddie Pearson was, at all times relevant hereto,
the Warden of Powhatan Correctional Center of VADOC and is a
final policy maker.

12.   Defendant Anthony Scott was, at all times relevant
hereto, Chief of Security of Powhatan Correctional Center and a
final policy maker.

13.   Defendant Robin L. Hulbert, PhD, was, at all times relevant hereto, the Mental Health Director for VADOC and final policy maker.

14.   Defendant Larry Edmonds was, at all times relevant hereto, the warden of Buckingham Correctional Center of VADOC and is a final policy maker.

15.   Defendant C. Davis was, at all times relevant hereto, Major Chief of Security of Buckingham Correctional Center.  Major Davis was also a member of De'lonta's treatment team, of VADOC and is a final policy maker.

16.   Defendant Lisa Lang was, at all times relevant hereto, a staff psychologist and a member of De'lonta's treatment team as De'lonta's primary therapist.

17.   Defendant Toney was, at all times relevant hereto, a counselor at Buckingham Correctional Center and a member of De'lonta's treatment team.

18.   All defendants herein are sued in their individual and official capacities.


## JURISDICTION AND VENUE

19.   This court has jurisdiction over the claims presented herein pursuant to 43 U.S.C. §§ 1331(a) and 1343.

20.   This court has supplemental jurisdiction over De'lonta's state law tort claims pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

21. Plaintiff Ophelia Azriel De'lonta is a pre-operative transsexual female, who is serving a 73 year sentence with the possibility of parole for bank robbery.

22. De'lonta is also suffering from a severe form of a rare, medically recognized major illness known as Gender Identity Disorder ("GID").

23. De'lonta has believed that she is actually a female who has been cruelly trapped in a male's body ever since she was a little girl.

24. This belief has caused De'lonta to suffer constant mental anguish and, at times, abuse.

25. While incarcerated, it has also caused De'lonta, on several occasions, to attempt to castrate herself.

26. De'lonta has received hormone therapy for GID.  De'lonta's treatment also consists of regular psychological counseling.

27. The hormone treatment has resulted in various physical changes to De'lonta's body, including enlargement of breasts, decreased body hair and change of voice intonation.

28. As a result of a civil action, 330 F.3d 630 (1999), and according to the settlement thereof, the VADOC has provided, and continue to provide, limited treatment.  That lawsuit culminated in a settlement agreement which put Director Gene Johnson "on notice that De'lonta has a serious medical need which is currently not being properly treated."  Therefore he has a responsibility to respond reasonably to it.

29. De'lonta has a serious medical need based on her diagnosis of GID. GID is defined as a major mental illness by the Diagnostic and Statistical Manual, Fourth Edition Text Revision ("DSM-IV-TR"). A transsexual, as the Supreme Court has described it, suffers from: "[a] rare psychiatric disorder in which a person feels persistently uncomfortable about her or his anatomical sex, and who typically seeks medical treatment, including hormone therapy and surgery, to bring about a permanent sex change."

30. De'lonta has had GID since her earliest memories. Substantial long-term history supports De'lonta's diagnosis with VADOC.

31. The agents and employees of VADOC, including defendants herein and medical professionals under contract to the VADOC, have acknowledged her diagnosis. Nonetheless, defendants have persistently denied De'lonta treatment.

32. De'lonta persistently feels like a woman trapped in a man's body. The failure to provide medical treatment to her will lead to serious bodily harm, untreated mental illness, depression, self-mutilation, and suicide.   " SEE EXHIBIT E "

33. The appropriate, generally accepted treatment for De'lonta includes treatment pursuant to "Standards of Care" published by the Harry Benjamin International Gender Dysphoria Association, Inc. The Standards of Care establish a "triadic treatment sequence" for treatment. This triadic treatment sequence is comprised of: (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and, (3) sex reassignment surgery.

34.   The Standards of Care state that cross-sex hormones are "often medically necessary" for "properly selected adults with gender identity disorders."  "They improve the quality of life and limit the psychiatric comorbidity, which often accompanies lack of treatment."  The administration of hormones to a transsexual typically diminishes co-existing serious psychological problems such as depression and suicidality.  As the Standards of Care explain:  "Hormone therapy can provide significant comfort to gender patients who do not wish to cross live or undergo surgery, or who are unable to do so.  In some patients, hormone therapy alone may provide sufficient symptomatic relief to abviate the need for cross living or surgery."

35.   Pursuant to the Standards of Care, after at least one year of a real-life experience, including hormones, sex reassignment surgery is medically indicated in some individuals.  The Standards of Care state that:  "Sex reassignment is effective and medically indicated in severer GID in persons diagnosed with transsexualism or profound GID.  Sex reassignment surgery, along with hormone therapy and real-life experience, is a treatment that has proven to be effective.  Such a therapeutic regimen, when prescribed or recommended by qualified practitioners, is medically indicated and medically necessary.  Sex reassignment is not "experimental", "investigational", "elective", "cosmetic", or optional in any meaningful sense.  It constitutes very effective and appropriate treatment for transsexualism or profound GID.

36.   Mental health services are provided by VADOC as well under contract with Dr. Codispoti, Gender Identity Specialist.

37. Nearly six years after the settlement in the Western District Court, the VADOC has been giving De'lonta limited treatment for GID. During the course of treatment, medical and mental health staff informed De'lonta if she stopped self-injury she would receive surgery. De'lonta began treatment with hormones during the winter of 2004, commencing the one year "real-life test" required by the Standards of Care. She has been dressing and living as a woman to the full extent permitted by VADOC. She has developed breasts as a result of hormone treatment.

38. Under Standards of Care, De'lonta should have been evaluated for sex reassignment surgery after a one year real-life test. At the conclusion of one year on hormones, nothing occurred. De'lonta's mental health professional, Chief Psychiatrist Meredith R. Cary, and also Mental Health Director Dr. Robin L. Hulbert, were unwilling to give any information regarding her treatment plan, despite De'lonta's persistent requests. (See Exhibit A ) And A-1

39. Despite repeated requests from De'lonta and intervention by her counsel, De'lonta has not received an evaluation concerning readiness for sex reassignment surgery.

40. The defendants, by failing to provide adequate medical treatment for De'lonta, have disregarded her serious medical need and placed her at a substantial risk of serious medical harm. De'lonta has been diagnosed by physicians retained by the VADOC as having a serious medical need. She has been denied adequate medical care - the very care recommended by the VADOC retained experts - for her serious medical need.   SEE EX - E

41. The defendants, who are officials responsible for making the relevant decisions regarding D'lonta's care, are aware, based

on information they have received from recommendations of experts, that a serious risk of harm exists, and the defendants have drawn the inference that such a risk exists.  Nonetheless, the defendants have behaved wantonly by failing to provide adequate medical care. (See Exhibits   *B*   ).

42.   The defendants are acting in bad faith and do not perceive any genuine conflict between providing adequate medical treatment and "security" concerns.

43.   The defendants' treatment decisions regarding De'lonta were not based on her unique circumstances or an individualized medical evaluation of De'lonta, but rather were based on a choice made for political rather than medical reasons.  The defendants' reasons for denying medical treatment are not rooted in legitimate penological concerns.

44.   The defendants have knowingly and unreasonably disregarded an intolerable risk of harm to De'lonta and will continue to do so unless injunctive relief is entered.  (See Exhibits  B, C, A) . E, A-1 De'lonta has written each defendant personally, expressing her fear of self-castration and noting that she will remain at serious risk of harm if treatment is not forthcoming.


## COUNT I

## DENIAL OF ADEQUATE MEDICAL TREATMENT WITH DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED IN VIOLATION OF THE EIGHTH AMENDMENT.


45.   The plaintiff repeats and realleges the allegations of Paragraphs 1 through 43 as if fully set forth herein.

52.   De'lonta's complaints are brought pursuant to the
Fourteenth Amendment, to deny access to any such service to any
individual, or to differentiate adversely in relation to any
individual, on a prohibited ground of discrimination.   *SEE EX - F*

53.   There is no dispute that discrimination on the basis of
transsexualism constitutes sex discrimination as well as
discrimination on the basis of a disability.   *See EX - D*

54.   VADOC policy requiring that anatomically male prisoners
be held in male institutions clearly has an adverse, differential
effect on pre-operative male to female transsexual inmates.  Non-
transsexual inmates are placed in prisons in accordance with both
their anatomical sex and their gender.  Transsexual inmates,
however, are placed in accordance with their anatomical sex, but
not their gender.

55.   VADOC's justification for its refusal to allow pre-
operative transsexuals to be placed in institutions in accordance
with their target gender is highly impressionistic.  The VADOC
contention that pre-operative male to female transsexuals cannot
be placed in female prisons because of the reaction of female
inmates is extremely troubling, as it gives legitimacy to the
prejudicial attitudes of others, which attitudes are based upon
fear and misinformation.

56.   Insofar as the risk that would be posed to female inmates
if they were required to share facilities with a pre-operative
male to female transsexual is concerned, non-consensual sexual
activities occur now in both male and female institutions.

57.   Transsexuals in transition who are living as members of
the desired sex should be considered to be members of that sex

46. De'lonta has a serious medical need for full treatment in accordance with the discretion of her treating physician and medical personnel, including the recommendations of consulting physicians in the treatment of GID.

47. De'lonta's serious medical need has not been treated and she has been denied full treatment, including sex reassigninment surgery. *See Exhibit A*

48. Defendants have been deliberately indifferent to De'lonta's serious medical needs and have denied her treatment for reasons that are unrelated to her medical needs or to legitimate security concerns. Defendants know that medical experts consider De'lonta to be at risk for serious medical harm and have knowingly disregarded that risk. *See Exhibit E*

49. Defendants' denial of medically necessary care for De'lonta constitutes deliberate indifference to her serious medical needs and cruel and unusual punishment, in violation of De'lonta's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

50. De'lonta faces a substantial and imminent risk of serious medical harm. *See Exhibit E*

COUNT II

DENIAL OF DUE PROCESS AND DELIBERATE INDIFFERENCE TO DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT.

51. The plaintiff repeats and realleges the allegations of Paragraphs 1 through 50 as if fully set forth herein.

for the purposes of human rights protected by the Equal Protection
Clause of the Fourteenth Amendment. Pre-operative male to female
transsexuals should be treated as women and housed accordingly.
(See Exhibit F).

58. VADOC has, and continues its practice of discriminating
attitudes of female inmates to preclude the placement of pre-
operative male to female transsexuals in female prisons, is one
which accords with a line of human rights jurispudence concerning
customer preference as a defense to an allegation of discrimination.

59. It is, however, indeed no defense to a complaint of
discrimination that an employer or service provider acted in a
discriminatory fashion because of the demands of his or her customers.

60. Accordingly, VADOC does not provide transsexual inmates
the level of health care provided to other inmates.

61. VADOC has failed to recognize the special vulnerability
of the pre-operative transexual inmate population within the
various types of facilities available in the male prison system.

62. As the Director and final policy maker, defendants
Johnson, Mental Health Services Robin Hulbert, and Chief
Psychiatrist Cary have known, and continue to know yet disregard
an excessive risk to De'lonta's health and safety by intentionally
providing an easier or cheaper, but much less effective, course
of treatment. (See exhibit E).

63.   After the 2004 settlement, Director Gene Johnson, mental health director Robin Hulbert, as well as Chief Psychiatrist Dr. Cary as final policy makers was on notice of the deliberately indifferent to substantial risk of serious harm and that there own indifference toward security staff training had contributed to those conditions; given defendants knowledge, they were under a duty not only to take reasonable measures to remedy the circumstances that directly led to the self-surgery of De'lonta, but to cure their own lack of attention and
unresponsiveness to De'lonta pleas and complaints, and other indicators of a serious problem with their security staff; Failing to train or supervise apporpriately.

## AMENDEND PARTIE

64. Defendant Lou Dixon Rigestered Nurse Manger,
    was at all times relevant hereto, the RN Manger for Buckingham
    Correctional Center, Supervisor and primary caregiver for De'lonta
    and final policy maker, at Buckingham Corr. Ctr. medical department.

65. On March 14th 2011, nurse Lou Dixon denied medication that is
    required for plaintiff to receive at a prescribed day. Nurse
    Dixon deliberately denied plaintiff hormone therapy treatment
    even after plaintiff's psychologist instructed nurse Dixon to
    give plaintiff her treatment.

66. For no medical justification, nor penalogical reasons nurse
    Dixon deliberate indifference to plaintiff's serious medical
    needs violated plaintiff's rights and constitution curel and
    unsual punishment under the eighth amendment by forcing plaintiff
    to experince extreme adverse effects, pain, as well as putting
    her at server substantial risk of seroius imminent danger, by
    blanten disreguard knowingly denying her mandated prescribed treatment.

67. Paragraphs 18, 31, 32, 40, 41, 42, 43, 44, 47, 48, 49, 50, 52,
    53, 62, of the allegations and 1, 2, 3, 4, of the relief requested,
    are amended to reflect the identity and actions of nurse Mgr,
    Lou Dixon.

PRAYERS FOR RELIEF

**WHEREFORE,** plaintiff requests that this court:

1)   Enter injunctive relief against the defendants enjoining them from interfering with the discretion of the mental health and other medical professionals involved in her care.

2)   Enter injunctive relief against defendants enjoining them to provide adequate medical care to De'lonta, following the Benjamin Standard of care, guided by a gender certified specialist, experienced in treating gender identity disorder, including sex reassignment surgery.

3)   Award monetary damages against all defendant herein for compensatory and punitive purposes in the amount of one Hundred Thousand Dollars each.

4)   Award such other relief as shall be requested in the interests of justice.

DECLARATION

Plaintiff hereby declares under penalty of perjury that the statements of the foregoing action are true and correct to the best of plaintiff's knowledge and belief.

Executed on: *May 31st, rh 2011*

*Ophelia Azriel De'lonta*
Ophelia Azriel De'lonta