CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 2 8 2011

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **OPHELIA AZRIEL DE'LONTA,** | ) | **Civil Action No. 7:11-cv-00257** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **GENE JOHNSON, <u>et al.</u>,** | ) | **By:   Hon. James C. Turk** |
| **Defendants.** | ) | **Senior United States District Judge** |

Ophelia Azriel De'lonta, a Virginia inmate proceeding <u>pro se</u>, filed a civil rights

Complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343.  Plaintiff

names as defendants Gene Johnson, the former Director of the Virginia Department of

Corrections ("VDOC"); Fred Schilling, Director of the VDOC's Health Services; Meredith R.

Cary, the VDOC's Chief Psychiatrist; Robert L. Hulbert, the VDOC's Mental Health Director;

Gary L. Bass, the VDOC's Chief of Operations; W. P. Rogers, the VDOC's Assistant Deputy

Director of Operations; Gerald K. Washington, a VDOC Regional Director; Eddie Pearson, the

Warden of Pocahontas Correctional Center ("PCC"); Anthony Scott, PCC's Chief of Security;

Larry Edmonds, Warden of Buckingham Correctional Center ("BCC"); Major C. Davis, BCC's

Chief of Security; Lisa Lang, a BCC staff psychologist; Toney, a BCC counselor; and Lou

Dixon, the BCC's Registered Nurse Manager.  Plaintiff alleges that the defendants' medical

treatment of her violates the Eighth Amendment and her placement in male correctional facilities

violates the Fourteenth Amendment.  This matter is before the court for screening, pursuant to 28

U.S.C. § 1915A.  After reviewing plaintiff's submissions, the court dismisses the Complaint

without prejudice for presently failing to state a claim upon which relief may be granted.

I.

Plaintiff presents three claims in her Complaint: the defendants' deliberate indifference to her serious medical need violates the Eighth Amendment; one missed dose of hormone therapy violates the Eighth Amendment; and the VDOC's policy of housing male transsexual inmates in male correctional facilities violates the Fourteenth Amendment.  Plaintiff requests injunctive relief to prevent defendants from interfering with medical professionals and to make them give her "adequate medical care."  Plaintiff also requests $100,000 from each defendant and any other relief to which she may be entitled.

A.

Plaintiff, born as Michael A. Stokes, is diagnosed with gender identity disorder ("GID"). The crux of GID is a feeling of being born into the body of the wrong sex; in plaintiff's case, she was born male but identifies as a being a pre-operative, transsexual female.  (Compl. ¶ 21.) Plaintiff has suffered from GID for many years, causing "constant mental anguish" and attempts to castrate herself.  (Id. ¶¶ 24-25.)

Plaintiff's primary caregivers within the VDOC for her GID are Meredith Carey, the VDOC Chief Psychiatrist, and Lisa Lang, plaintiff's primary therapist.  (Id. ¶¶ 7, 16.)  The VDOC also contracts with a doctor, who is a GID specialist, to assist with plaintiff's treatment. (Id. ¶¶ 31, 36, 37.)  Part of her treatment has been to receive hormone treatments and "regular psychological counseling."  (Id. ¶¶ 26, 28, 36.)  The hormone treatments caused physical changes, including breast development, decreased body hair, and a higher-pitched voice.  (Id. ¶ 27.)  Despite acknowledging these treatments, plaintiff alleges that "defendants have persistently denied [plaintiff] treatment" and "the failure to provide medical treatment to her will

2

lead to serious bodily harm, untreated mental illness, depression, self-mutilation, and suicide." (Id. ¶¶ 31-32.)

Plaintiff argues that the Standards of Care, published by the Harry Benjamin International Gender Dysphoria Association ("Association"), are the generally accepted treatment for GID. The Standards of Care establish a "triadic treatment sequence" comprised of (1) hormone therapy, (2) a real-life experience of living as a member of the opposite sex, and finally (3) sex reassignment surgery. (Compl. ¶ 33.)  Hormone therapy is "often medically necessary" for "properly selected adults" with GID. (Id. ¶ 34.)  "In some patients, hormone therapy alone may provide sufficient symptomatic relief to [o]bviate the need for cross living or surgery." (Id.)

The Standards of Care provide that "after at least one year of real-life experience, including hormones, sex reassignment surgery is medically indicated in some individuals." (Id. ¶ 35.)  Plaintiff notes that the surgery is not experimental, investigational, elective, cosmetic, or optional but is instead an effective and appropriate GID treatment and a "therapeutic regimen[] when prescribed or recommended by qualified practitioners." (Id.)

Plaintiff has received treatment in accordance with the Standards of Care since 2004. (Id. ¶ 37.)  Plaintiff received the hormone treatments in 2004 and began the one-year "real-life" test, albeit confined in a correctional facility, by dressing and living as a woman to the extent permitted by the VDOC.  However, plaintiff believes that she became eligible for surgery after one year of her "real-life" test.  Plaintiff wants to receive a medical evaluation for surgery, but Cary and Hubert allegedly are unwilling to give plaintiff information about her treatment plan. Plaintiff supports this allegation with the letter she allegedly wrote to Hubert. (Id. Ex. A-1.)  In this letter dated May 2010, plaintiff describes how her frustration to learn more about her future

3

treatment makes her want to castrate herself.  She also notes that the treatment she has received

for the prior five years "produc[ed] growth and stability." (Id.)  Plaintiff concludes that the

defendants' apparent decision to not yet evaluate her for surgery constitutes the "deni[al] [of]

adequate medical care" and "placed her at a substantial risk of serious medical harm." (Compl.

¶ 40.)  Plaintiff also concludes without support that the results of her medical treatment are based

"on a choice made for political rather than medical reasons" and are not based on legitimate

penological concerns. (Id. ¶ 43.)  However, plaintiff acknowledges in a grievance that she has

recently mutilated herself and has urges to mutilate herself again. (Id. Ex. E.)

Plaintiff also attached a letter from Cary, who corroborates that plaintiff consults with

Lang, receives hormone treatments, and receives various "feminizing articles." (Id. Ex. C.)  Cary

finishes the letter by stating, "Lastly, in regards to gender reassignment surgery, I would request

that you continue to work with Ms. Lang in individual therapy at this time." (Id.)

B.

On March 14, 2011, Lou Dixon denied plaintiff one dose of hormone therapy. (Id. ¶ 65.)

Plaintiff argues that missing this one dose violated the Eighth Amendment's prohibition of cruel

and unusual punishment. (Id. ¶ 66.)  Dixon responded to the accusation in a grievance by

alleging that plaintiff did not pickup her medication at the scheduled time. (Compl. Ex. G.)

C.

Plaintiff is housed in a male-correctional facility but wants to be housed in a female

correctional facility.  Plaintiff argues that the VDOC's policy of housing male transsexuals in a

male facility constitutes discrimination, in violation of the Fourteenth Amendment, on the bases

of sex and disability. (Id. ¶ 53.)  Plaintiff speciously argues that "non-transsexual inmates are

4

placed in prisons in accordance with their anatomical sex and their gender.  Transsexual inmates,
however, are placed in accordance with their anatomical sex, but not their gender."  (Id. ¶ 54.)
This policy, she concludes, is "highly impressionistic," "prejudicial," and based on "fear and
misinformation."  (Id. ¶ 55.)  Plaintiff concludes that "transsexuals in transition" who are living
as members of the opposite sex should be considered as the opposite sex; "pre-operative male to
female transsexuals should be treated as women and housed accordingly."  (Id. ¶ 57.)

D.

In 1999, plaintiff filed a civil rights action about her GID treatment because of a change
in VDOC policy.  De'Lonta v. Angelone, No. 7:99-cv-00642 (W.D. Va. Oct. 7, 2004).  See
United States Fidelity & Guar. Co. v. Lawrenson, 334 F.2d 464, 467 (4th Cir. 1964) (quoting
Lowe v. McDonald, 15 Alaska 510, 221 F.2d 228, 230-31 (9th Cir. 1955)) (stating a district court
may take judicial notice of records of a related, prior proceeding between the same parties).  The
policy change prohibited an inmate from receiving medical or surgical intervention to treat GID,
and the VDOC left plaintiff untreated and at serious risk to continue mutilating herself.  Indeed,
once the VDOC promptly stopped the hormone therapy, plaintiff mutilated her male genitalia
more than twenty times over four years.  Plaintiff unsuccessfully requested the VDOC staff to
resume hormone therapy, and she filed suit in 1999.[1]  That civil action ultimately settled in 2004,
and she resumed her medical treatment as she describes in the instant Complaint.

---

[1] During those proceedings, the defendants in the case filed a Psychosexual Evaluation Report of plaintiff, and the
Association filed an amicus brief, by which the court became familiar with the Standards of Care.  Similar to
plaintiff's instant description, the Association described the Standards of Care as psychiatric assessments, hormone
therapy, real-life assessments and, where appropriate, surgery; overall, it is a lengthy process, even for someone not
incarcerated.

II.

The court must dismiss any action or claim filed by an inmate if the court determines that

the action or claim is frivolous or fails to state a claim on which relief may be granted.  See 28

U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c).  The first standard includes claims

based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest

which clearly does not exist," or claims where the "factual contentions are clearly baseless."

Neitzke v. Williams, 490 U.S. 319, 327 (1989).  The second standard is the familiar standard for

a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the plaintiff's

factual allegations as true.  A complaint needs "a short and plain statement of the claim showing

that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to

relief above the speculative level . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(internal quotation marks omitted).  A plaintiff's basis for relief "requires more than labels and

conclusions . . . ."  Id.  Therefore, a plaintiff must "allege facts sufficient to state all the elements

of [the] claim."  Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

However, determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1950 (2009).  Thus, a court

screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an

assumption of truth because they consist of no more than labels and conclusions.  Id.  Although

the court liberally construes pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972),

the court does not act as the inmate's advocate, sua sponte developing statutory and

constitutional claims the inmate failed to clearly raise on the face of the complaint.  See Brock v.

6

Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). However, plaintiff fails to presently state a claim upon which relief may be granted, and the court dismisses the Complaint without prejudice.

A.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need in order to state an Eighth Amendment claim for unconstitutional medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986).

In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question

7

subjectively recognized that his actions were 'inappropriate in light of that risk.'").  The prisoner

must show that a defendant's action was "[s]o grossly incompetent, inadequate, or excessive as

to shock the conscience or to be intolerable to fundamental fairness."  Id.  Non-medical prison

employees can be found to have acted with deliberate indifference if they intentionally delay or

deny an inmate access to medical care or intentionally interfere with the prescribed treatment.

Estelle, 429 U.S. 104-05.

      Plaintiff fails to establish a defendant's deliberate indifference.  Plaintiff concludes that

the defendants are "persistently denying her treatment," but plaintiff's own allegations contradict

this conclusion.  Plaintiff repeatedly acknowledges that, since the 1999 action, she continues to

receive medical treatment for her GID from the VDOC Chief Psychiatrist, a staff psychologist,

and a counselor, who are advised by a doctor who specializes in GID.  In conformity with the

Standards of Care, plaintiff receives mental health consultations, receives hormone therapy, and

is permitted to dress and live as a woman to the extent possible in a correctional facility.

      The only treatment described by the Standards of Care that she has not yet received is the

sex reassignment surgery.  However, plaintiff is not entitled to the surgery, simply either because

she has GID or because she has been living as a woman in a male correctional facility.  See

Maggert v. Hanks, 131 F.3d 670, 671 (7th Cir. 1997) ("A prison is not required by the Eighth

Amendment to give a prisoner medical care that is as good as he would receive if he were a free

person, let alone an affluent free person.  He is entitled only to minimum care.") (citations

omitted).  Indeed, plaintiff acknowledges that the surgery is "medically indicated in some

individuals . . . . when prescribed or recommended by qualified practitioners." (Compl. ¶ 35

(emphasis added).)  The rationale is clear: the appropriateness of surgery is determined by a

medical professional's exercise of discretion.  Defendant Cary's letter to plaintiff establishes that she is aware, as all members of plaintiff's treatment team are undoubtedly aware, of plaintiff's preference for surgery.  However, Cary deferred on plaintiff's request for surgery and told her to continue therapy with the staff psychologist.  Despite plaintiff's claims that the defendants are denying her medical care, it is clear that the defendants are denying her only her preferred therapy of surgery.  See Maggert, 131 F.3d at 672 ("Withholding from a prisoner an esoteric medical treatment that only the wealthy can afford does not strike us as a form of cruel and unusual punishment. . . .  [W]e cannot see what is cruel about refusing a benefit to a person who could not have obtained the benefit if he had refrained from committing crimes.  We do not want transsexuals committing crimes because it is the only route to obtaining a cure."); Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986) (finding that a prison is not automatically required to provide female hormones to a transsexual inmate absent a constitutional need).  Furthermore, plaintiff fails to allege specific facts about how each defendant's acts or omissions violated the Eighth Amendment.

Claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding.  Estelle, 429 U.S. at 105-06.  See Sosebee, 797 F.2d at 181; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment).  A prisoner's disagreement with medical personnel over the course of treatment does not state a § 1983 claim.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

After reviewing plaintiff's submissions, she does not present a situation where there is a total failure to give medical attention or a policy prohibiting her treatment for GID, similar to her experiences in 1999. Instead, plaintiff receives medical therapies, and her current dissatisfaction with the progress or choice of treatment does not state a claim of constitutional rights under the Eighth Amendment. Plaintiff's literal claim that the defendants will not tell her about her future course of treatment also does not present an Eighth Amendment violation.

Plaintiff similarly fails to state a claim against Nurse Dixon. Plaintiff simply alleges that Dixon did not give her one dose of medicine in March 2011 without any substantial risk of serious harm. See Farmer, 511 U.S. at 834 (describing harm requirement). One missed dose of plaintiff's medicine does not implicate any constitutional injury. Accordingly, the court dismisses plaintiff's Eighth Amendment claims for failing to state a claim upon which relief may be granted.

## B.

Plaintiff claims that the VDOC's inmate classification by sex and GID "disability" constitutes a violation of Equal Protection guaranteed by the Fourteenth Amendment. Specifically, plaintiff argues that the VDOC "policy requiring that anatomically male prisoners be held in male institutions clearly has an adverse, differential effect on pre-operative male to female transsexual inmates. Non-transsexual inmates are placed in prisons in accordance with both their anatomical sex and their gender. Transsexual inmates, however, are placed in accordance with their anatomical sex, but not their gender." (Compl. ¶ 54.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend

XIV, § 1.  To state an Equal Protection claim under the Fourteenth Amendment, plaintiff must show that she was treated differently from others who were similarly situated and that such unequal treatment was the result of intentional or purposeful discrimination.  Blagman v. White, 112 F. Supp. 2d 534, 538 (E.D. Va. 2000) (citing McGlothlin v. Murray, 993 F. Supp. 389, 406 (W.D. Va. 1997), aff'd, 151 F.3d 1029 (4th Cir. 1998)).  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (acknowledging a "class of one" Equal Protection claimant).  Claims of gender discrimination under prison regulations are analyzed with intermediate scrutiny. Ashann-Ra v. Virginia, 112 F. Supp. 2d 559, 571 (W.D. Va. 2000) (citing West v. Va. Dep't of Corr., 847 F. Supp. 402, 407 (W.D. Va. 1994) and Bukhari v. Hutto, 487 F. Supp. 1162 (E.D. Va. 1980)).  At the same time, the court understands that it must show some deference to the expertise of prison officials regarding matters of prison administration.  See Bell v. Wolfish, 441 U.S. 520, 547 (1978).  Thus, a gender classification fails unless it is substantially related to a sufficiently important governmental interest.  Mississippi University for Women v. Hogan, 458 U.S. 718, 725-26 (1982).

Plaintiff presently fails to state an Equal Protection claim.  Plaintiff admits, as she must, that the VDOC assigns inmates by their sex, regardless of their gender roles.  Therefore, her legal claim is flawed because plaintiff, with male genitalia, is treated the same as those similarly situated inmates with male genitalia, all of whom have varying degrees of masculine or feminine gender; they are housed according to sex.[2]  Inmates with male genitalia are housed together, and inmates with male genitalia are not housed in a female facility.

The legitimate penological interest does not need extensive discussion, but suffice it to

[2] Plaintiff does not allege that any male inmate with GID, like plaintiff, has been allowed to live with female inmates.

11

say that the risk of harm to the female inmates, of harm to the one male inmate, or of defending

legal claims from nearly all other male inmates requesting housing in a female prison warrants

maintaining separate facilities based on sex.  The court can envision the morass of assigning

inmates' housing by judging gender without regard to sex; the result presumably is an incredibly

costly and astonishingly ineffective correctional system.  Thus, the VDOC clearly has a

sufficiently important governmental interest in separating inmates by sex.  Plaintiff minimizes

these legitimate penological concerns about mixing the sexes by alleging that "non-consensual

sexual activities occur now in both male and female institutions."  (Compl. ¶ 56.)  However, the

Eighth Amendment charges prison officials with protecting inmates from harm, not to disregard

an apparent threat of harm or to promote policies bringing about its wholesale, definite

occurrence.  Accordingly, the court dismisses plaintiff's Fourteenth Amendment claim because

she fails to show that she was treated differently from similarly-situated inmates and that any

alleged unequal treatment resulted from intentional or purposeful discrimination.

III.

For the foregoing reasons, the court dismisses plaintiff's Complaint without prejudice for

failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff may refile her claims in a new and separate action at the time of her choice.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying

Order to plaintiff.

**ENTER**: This 2 8th day of October, 2011.

_Senior United States District Judge_

12