**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| Ophelia Azriel De'lonta, *Plaintiff*, | ) | |
| *v*. | ) | Civil Action No. 7:11-cv-00257 |
| Harold W. Clarke, *et al.*, *Defendants*. | ) | |

**REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**
**AND TO COMPEL ACCESS TO PLAINTIFF**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..... 3

I. Plaintiff Has Shown Her Clear Entitlement To A Preliminary Injunction And None Of Defendants' Arguments Undermines That Showing ..... 3

A. Plaintiff Is Likely To Succeed On The Merits Of Her Eighth Amendment Claim ..... 3

B. The Remaining Preliminary Injunction Factors Weigh Decisively In Plaintiff's Favor ..... 7

II. This Court Should Order Defendants To Allow GID Specialist Access To Ms. De'lonta ..... 9

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Battista v. Clarke*,
645 F.3d 449 (1st Cir. 2011) ........................................ 3, 7

*De'lonta v. Angelone*,
330 F.3d 630 (4th Cir. 2003) ("*De'lonta I*") ........................................ 1

*De'lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) ("*De'lonta II*") ........................................ 1, 2, 5

*Estelle v. Gamble*,
429 U.S. 97 (1976) ........................................ 9

*Fields v. Smith*,
653 F.3d 550 (7th Cir. 2011) ........................................ 7

*Konitzer v. Frank*,
711 F. Supp. 2d 874 (E.D. Wis. 2010) ........................................ 5, 8

*Kosilek v. Maloney*,
221 F. Supp. 2d 156 (D. Mass. 2002) ........................................ 5

*Kosilek v. Spencer*,
889 F. Supp. 2d 190 (D. Mass. 2012) ........................................ 3, 6, 7

*Kosilek v. Spencer*,
C.A. No. 00-12455, 2012 WL 3800846 (D. Mass. Sept. 4, 2012) ........................................ 6

*Soneeya v. Spencer*,
851 F. Supp. 2d 228 (D. Mass. 2012) ........................................ 3, 7

Ophelia De'lonta's motion seeks two minimal and straightforward forms of preliminary relief addressed to Defendants' longstanding, unconstitutional denial of necessary medical care. First, she asks the Court to order that Defendants provide an evaluation to determine her readiness for sex reassignment surgery by a competent specialist in the treatment of GID. Second, she asks the Court to compel Defendants to grant access to Ms. De'lonta for an evaluation by her own GID specialist, at her own expense, for purposes of this litigation. Both requests are fundamental to reaching a final resolution of this case. The motion should be granted, and Defendants make no persuasive arguments to the contrary.

The critical facts supporting Ms. De'lonta's motion for a preliminary injunction are undisputed and demonstrate that Ms. De'lonta is likely to succeed on the merits of her Eighth Amendment claim:

- Defendants have been on notice of Ms. De'lonta's GID for decades. *See De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) ("*De'lonta II*").

- Defendants are and have been aware that Ms. De'lonta has repeatedly attempted self-castration as a result of Defendants' failure to adequately treat her GID. Cary Tr. 79:16-23; Lang Tr. 46:3-12; *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) ("*De'lonta I*"); *De'lonta II*, 708 F.3d at 525.[1]

- Defendants agreed in settling Ms. De'lonta's prior action that they would provide Ms. De'lonta with medical care in ongoing consultation with medical professionals with expertise in treating GID. SA ¶¶ 2, 5, 7.

- Defendants have been on notice since Dr. Codispoti's 2007 report that an evaluation was proper upon satisfaction of certain conditions, all of which Ms. De'lonta had met as early as 2008. *See* PI Br. 7, 27-28.

- Defendants admit that "since Plaintiff's meetings with Dr. Codispoti in 2006, Plaintiff has not received an evaluation from a medical expert with competency in the field of GID treatment to determine her eligibility and readiness for [sex reassignment surgery]." Answer ¶ 34; *id.* ¶ 36 (same).

---

[1] All citations to record evidence have the same meaning as was given in Ms. De'lonta's opening brief.

- Defendants have maintained a policy (in place in one form or another since at least 1995) that unconstitutionally restricts the treatment VDOC provides for inmates with GID and, in its current incarnation, expressly prohibits inmates from "further[ing]" the "sexual reassignment process." Hardin Decl., Ex. 13 at 5926 (2013 guidelines).

Ms. De'lonta has thus amply made the showing required even under the exacting standards for a mandatory preliminary injunction.

Defendants' arguments in opposition are meritless. Defendants previously tried to persuade the Fourth Circuit that they could avoid an Eighth Amendment obligation to provide sex reassignment surgery to Ophelia De'lonta because no doctor had determined it was medically necessary. The Fourth Circuit flatly rejected that contention, stating: "[W]e struggle to discern how De'lonta could have possibly satisfied that condition when, as she alleges, Appellees have never allowed her to be evaluated by a GID specialist in the first place." *De'lonta II*, 708 F.3d at 526 n.4. Now, in steadfastly insisting again that no evaluation is warranted, Defendants rely exclusively on the uninformed judgment of Defendant Dr. Meredith R. Cary that Ms. De'lonta's borderline personality disorder makes her a poor candidate for sex reassignment surgery. But Dr. Cary met Ms. De'lonta only once and never evaluated her, has minimal experience treating patients with GID, and merely oversees Ms. De'lonta's treatment in a supervisory capacity. Even if the Court were to credit her judgment—and it clearly should not—it would be insufficient to relieve Defendants of their constitutional obligation to have Ms. De'lonta evaluated for sex reassignment surgery by a competent medical professional, consistent with the Fourth Circuit's decision in this case. And Defendants do not even attempt to dispute Ms. De'lonta's motion to compel access by her own expert for purposes of litigation: Defendants literally say nothing in response to that aspect of Ms. De'lonta's motion.

Defendants should be ordered to provide a competent evaluation, and separately Ms. De'lonta is entitled to be seen by her own expert to enable her to litigate this case to finality. Plaintiff's motion should accordingly be granted.

## ARGUMENT

### I. Plaintiff Has Shown Her Clear Entitlement To A Preliminary Injunction And None Of Defendants' Arguments Undermines That Showing

#### A. Plaintiff Is Likely To Succeed On The Merits Of Her Eighth Amendment Claim

Notwithstanding the facts recited above, Defendants appear to contend that Ms. De'lonta is not entitled to an evaluation by a GID specialist because Dr. Cary, who proclaims herself to be experienced in the treatment of GID, believes that Ms. De'lonta is not a good candidate for SRS as a result of her borderline personality disorder.[2] That argument is without merit, and is simply the latest in Defendants' decades-long campaign to deny Ms. De'lonta medically necessary treatment for her GID.

Dr. Cary is in no position to make the determination that "mood instability, low frustration tolerance, unrealistic expectations and impulsivity" render Ms. De'lonta not a "viable candidate for sex reassignment surgery." Cary Aff. ¶ 4. As Plaintiff explained in her opening brief, Dr. Cary has minimal experience treating patients with GID, and in fact does not treat Ms.

---

[2] Defendants contend that their misconduct prior to June 2009 is irrelevant to Ms. De'lonta's Eighth Amendment claim because Virginia has a two-year statute of limitations for personal injury claims. Opp. 4 n.1. But they do not allege that her claim is untimely, and there is no dispute that Ms. De'lonta's complaint arises from Defendants' current, ongoing denial of medically necessary treatment, in violation of the Constitution. Defendants' misconduct prior to June 2009 bears on that claim because it both demonstrates their longstanding subjective indifference to Ms. De'lonta's serious medical need, and evidences that their current refusal to evaluate her is part of a longstanding pattern of pretext, evasion of responsibility, and bad faith. *See* PI Br. 27-30; *see also Battista v. Clarke*, 645 F.3d 449, 455 (1st Cir. 2011) (noting that "defendants ha[d] forfeited the advantage of deference" due to "a pattern of delays, new objections substituted for old ones, misinformation and other negatives"); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 248 (D. Mass. 2012) (considering the Department of Corrections' "pattern of denials and delay"); *Kosilek v. Spencer*, 889 F. Supp. 2d 190, 249 (D. Mass. 2012) ("[T]he [Department of Corrections] has persisted in presenting pretexts for impermissible reasons for denying Kosilek the treatment [the Department's] doctors have prescribed.").

De'lonta at all—she has met Ms. De'lonta only once and has never evaluated her. *See* PI Br. 8. Dr. Cary's entire understanding of Ms. De'lonta's condition comes from Defendants Lisa Lang and Jeena Porterfield, who themselves lack any relevant qualifications for treating GID or making the sort of judgment upon which Defendants appear to rest their decision to deny Ms. De'lonta an evaluation. *See* PI Br. 22-27.

Notably, Defendants do not contend that Dr. Cary meets the requisite qualifications for a GID specialist set forth in the parties' settlement agreement—specifically, that Ms. De'lonta's treatment would be guided by "qualified specialists" with "substantial expertise in the treatment of GID." SA ¶¶ 5, 7. They are thus patently in breach of that agreement, and they consequently acknowledge that Ms. De'lonta's treatment is not currently being guided or overseen by anyone with competence in the field of GID treatment—which Defendants previously agreed was necessary to ensure that Ms. De'lonta was receiving appropriate treatment. Nonetheless, Defendants would have this Court determine that they are providing Ms. De'lonta with constitutionally adequate treatment.

Even were Dr. Cary competent to make the judgment she purports to make here, that judgment is so utterly indefensible a reason for denying Ms. De'lonta an evaluation that it must be rejected, even under the heightened deference courts customarily accord to prison officials. Dr. Cary's opinion is that the need to treat co-occurring mental disorders precludes Ms. De'lonta's examination by a GID specialist.[3] Cary Aff. ¶ 4. But it is the uncontroversial,

---

[3] Dr. Cary also opines that Ms. De'lonta "has made minimal gains with regard to symptoms of Borderline Personality Disorder," Cary Aff. ¶ 5, and Defendants cite this observation as a reason for denying Ms. De'lonta an evaluation, *see* Opp. 5. As an initial matter, Dr. Cary has not made this determination—or the determination that Ms. De'lonta has not "meaningfully participated" in psychotherapy, *see* Opp. 4—based on personal evaluation of Ms. De'lonta, and it therefore ought not be credited. *See* PI Br. 8. Moreover, her opinion is simply belied by the record. For example, Ms. De'lonta has consistently satisfied the terms of her six-month behavioral plans and received the "feminizing item" permitted thereunder since the beginning of 2011, demonstrating—at least in the eyes of Defendants, who devise the behavioral plan—that Ms. De'lonta is meeting their expectations for management of her mental health generally and borderline behaviors specifically. *See* Porterfield Tr. 34:4-6 (noting

undisputed view among medical professionals—with the exception, evidently, of Dr. Cary—that patients with multiple disorders (*e.g.*, borderline personality disorder and GID) must be treated for *both*. The presence of one is no reason to deny necessary treatment for the other. Brown Decl. ¶¶ 46-47; *cf. Konitzer v. Frank*, 711 F. Supp. 2d 874, 892 (E.D. Wis. 2010) (citing testimony that GID expert "would not approach a patient who had GID any differently because that patient might also have other co-morbid personality disorders such as borderline personality disorders. Just like a medical doctor might see diabetes and GID and Raynaud's syndrome in the same patient, he would not refuse treatment for anyone of those conditions just because they exist in a person simultaneously."); *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 188 (D. Mass. 2002) ("[I]f Kosilek had cancer, and was depressed and suicidal because of that disease, the DOC would discharge its duty to him under the Eighth Amendment by treating both his cancer and his depression."). Indeed, the persistence of symptoms arising from Ms. De'lonta's borderline personality disorder and GID is all the more reason for her to be evaluated by

---

the establishment of a behavioral plan). The Court therefore ought not credit Dr. Cary's entirely *ipse dixit* declarations. Indeed, as Plaintiff showed in her opening brief, Dr. Cary was similarly contradicted by the record when she testified as to why Ms. De'lonta was denied an evaluation in 2008 and 2009, after she complied fully with Dr. Codispoti's recommendations. *See* PI Br. 27-28; *compare* Cary Tr. 49:9-16, 52:11-15 (contending that Ms. De'lonta was denied an evaluation in 2008 and 2009 because she was psychiatrically unstable due to her borderline personality disorder), *with* Hardin Decl., Ex. 23 at 6680 (Porterfield report noting that Ms. De'lonta is "stable and well-managed from an institutional and treatment perspective" as of February 2009).

Equally, even if Ms. De'lonta's progress managing her borderline personality disorder could be properly characterized as "minimal," it does not follow that an evaluation is not medically necessary. Defendants do not assert that Ms. De'lonta has made *no* gains but concede that she has made—at the least—"minimal" gains. The question whether her progress in managing her borderline personality disorder is sufficient to support a referral for sex reassignment surgery must be addressed in an evaluation for sex reassignment surgery, not in a preliminary determination as to whether the evaluation is necessary. *See* Brown Decl. ¶ 47 ("[Other mental health disorders], when poorly controlled, *may* contraindicate a *referral* for sex reassignment surgery, but such a determination could only be reached after a GID specialist has been given an opportunity to perform a thorough evaluation of the patient."). Further, even setting aside the factual inaccuracies that fatally undermine Dr. Cary's conclusions, Defendants' argument that Ms. De'lonta must more meaningfully participate in therapy (and make more progress in the management of her borderline personality disorder) before being evaluated for SRS is meritless. The Fourth Circuit specifically identified Dr. Cary's instruction to Ms. De'lonta to continue therapy in lieu of an evaluation for sex reassignment surgery as a fact that, taken as true, demonstrates Defendants' deliberate indifference to Ms. De'lonta's serious medical need. *See De'lonta II*, 708 F.3d at 525. Yet Defendants now ask this Court to hold that the need for more, better, or more successful therapy precludes an evaluation for sex reassignment surgery.

someone with competence in treating GID, who would necessarily have experience in differentiating between symptoms of GID and those of other mental illnesses, and could determine what treatment is necessary to manage both. Brown Decl. ¶¶ 17-18. Dr. Cary has no such experience.

Defendants attempt to bolster Dr. Cary's opinion—insupportable on its own—by pointing to Cynthia Osborne's nine-year-old evaluation and Dr. Victoria Codispoti's six-year-old evaluation as supposed evidence that Ms. De'lonta is presently ineligible for sex reassignment surgery. Neither report is persuasive support for Defendants' *current* denial of an evaluation. Ms. Osborne's report was issued even before Ms. De'lonta began hormone therapy. More to the point, Ms. Osborne has been thoroughly discredited by the federal courts as a witness in transgender inmate cases. In *Kosilek*, Judge Wolf rejected Ms. Osborne's testimony that SRS was "not medically necessary" for a prison inmate, due to Osborne's "known positions and foreseeable advice" that prison inmates should never be provided with sex reassignment surgery. *Kosilek*, 889 F. Supp. 2d at 221. Indeed, the court found that the Massachusetts' Department of Corrections' decision to hire and rely on Osborne was evidence of its "determin[ation] to delay and defeat [the inmate's] effort to get the surgery." *Id.*[4] *See also Kosilek v. Spencer*, C.A. No. 00-12455, 2012 WL 3800846, at *1 (D. Mass. Sept. 4, 2012) ("the court did not find [Ms. Osborne's] expert testimony to be persuasive"). As to Dr. Codispoti, Ms. De'lonta explained in her opening brief that Dr. Codispoti's 2007 report affirmatively disclaimed any evaluation of Ms. De'lonta's readiness for sex reassignment surgery, and instead prescribed one year of hormone treatment, one year of living as a woman, and one year of therapy. PI Br. 6-7, 20, 27-28. Ms.

---

[4] Judge Wolf also observed that, because Osborne "is a social worker rather than a medical doctor, there is a question whether she should be regarded as among those eligible to be found a prudent professional for the purpose of diagnosing what is medically necessary and prescribing treatment for Kosilek." *Kosilek*, 889 F. Supp. 2d at 232 n.14.

De'lonta completed that prescribed course of treatment, *see* PI Br. 27-28, but Defendants did nothing. Instead, they denied Ms. De'lonta's request for an evaluation because, as they informed Ms. De'lonta, "the state will not incur the cost of the surgery," Hardin Decl., Ex. 8.

Defendants have conspicuously not denied that they maintain a blanket policy that refuses Ms. De'lonta an evaluation for sex reassignment surgery and would refuse her the surgery itself even if it were deemed medically necessary.[5] There is accordingly no reason for this Court to credit Defendants' explanation for why they continue to deny Ms. De'lonta an evaluation; rather, there is every reason to believe that their current justification is merely pretext. *See Battista*, 645 F.3d at 453, 455 (declining to credit defendants' explanation for denying treatment to a transgender inmate when defendants' actions were "undercut by a composite of delays, poor explanations, missteps, changes in positions and rigidities"); *see also Soneeya*, 851 F. Supp. 2d at 248-49; *Kosilek*, 889 F. Supp. 2d at 209-12. Defendants' policy has been place in one form or another since 1995, during which time Defendants have offered an array of shifting and indefensible reasons for denying Ms. De'lonta an evaluation. Those reasons—just like the reason they offer now—are simply cover for a predetermination that Ms. De'lonta will *never* be provided with an evaluation in the absence of a court order.

### B. The Remaining Preliminary Injunction Factors Weigh Decisively In Plaintiff's Favor

As to the three remaining preliminary injunction factors—the likelihood of irreparable harm, the balance of equities, and whether the public interest favors an injunction—Defendants

---

[5] Nor do Defendants deny that their policy is patently unconstitutional. *See, e.g.*, *Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011) (affirming district court's judgment "that defendants acted with deliberate indifference in that defendants knew of the serious medical need but refused to provide hormone therapy because of" blanket state policy prohibiting use of hormone treatment); *Soneeya*, 851 F. Supp. 2d at 247 ("This blanket ban on certain types of treatment, without consideration of the medical requirements of individual inmates, is exactly the type of policy that was found to violate Eighth Amendment standards in other cases both in this district and in other circuits.").

simply contend that because they have not violated Ms. De'lonta's Eighth Amendment rights, none of the factors weighs in favor of an injunction. Because their starting premise is wrong, so too are their arguments against an injunction.

As to irreparable harm, Defendants contend that Ms. De'lonta's self-injurious behavior is "most often" not attributable to her inadequately treated GID. Opp. 5. Conspicuously absent from their discussion is any mention of Ms. De'lonta's attempts to castrate herself, which they cannot plausibly deny are unrelated to GID, as discussed in Ms. De'lonta's opening brief. *See* PI Br. 26-27. Indeed, even Cynthia Osborne—on whose opinion Defendants rely here—has rejected Defendants' implausible contention. Ms. Osborne testified in another federal court case concerning a transgender inmate, on behalf of the Department of Corrections, "that she is not aware of any antisocial or borderline patient who has auto-castrated, but that she has had GID patients who have done so." *Konitzer*, 711 F. Supp. 2d at 892 (internal citation omitted). Other experts testifying for the Department of Corrections in that case agreed. *See id.* at 894 ("In his experience, Dr. Claiborn testified that patients with borderline personality disorder that practice self-mutilation usually do so in the form of wrist slitting. Dr. Claiborn has never in his experience seen, or heard, of a patient with borderline personality disorder who has attempted genital mutilation, and believes it unusual to see any kind of self-mutilation with a person with antisocial personality disorder." (internal citation omitted)). In any event, Defendants acknowledge that Ms. De'lonta's GID has sometimes caused her to injure herself when they concede that not all of her self-injurious behavior springs from her borderline personality disorder. *See* Opp. 5 (noting that Ms. De'lonta's self-harm has "*most often* been driven by her Borderline Personality Disorder" (emphasis added)). This suffices to show that Ms. De'lonta is likely to harm herself in the absence of an evaluation by a GID specialist.

As to the equities, Defendants make no serious argument challenging the analysis offered in Plaintiff's opening brief: Ms. De'lonta's suffering far outweighs the minimal burden on Defendants of providing an SRS evaluation, and Defendants' dubious assertions[6] about Ms. De'lonta's preparedness for an evaluation simply do not bear on this factor. Finally, the public has no interest in abiding Defendants' willful violation of Ms. De'lonta's Eighth Amendment rights.

## II. This Court Should Order Defendants To Allow GID Specialist Access To Ms. De'lonta

Defendants have insistently denied Ms. De'lonta's requests to make her accessible to a GID specialist of her choosing, for an evaluation conducted at her own expense for purposes of this litigation. Yet Defendants do not utter a word in response to her motion to compel access. The position they have maintained is clearly indefensible: As Ms. De'lonta showed in her opening brief, the law clearly entitles her to a voluntarily retained expert examination. PI Br. 32-33; *cf. Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (intentionally delaying an inmate's access to medical care runs afoul the Eighth Amendment). Especially in the absence of any opposition from Defendants, the motion to compel access to Plaintiff should be granted.[7]

---

[6] Defendants point to one alleged incident in which Ms. De'lonta moved or removed her estrogen patch as evidence that Ms. De'lonta sought to "manipulate her treatment," which they appear to suggest has some unspecified bearing on the balance of the equities analysis. Opp. 6-7. Defendants offer no evidence that this ever happened, much less that Ms. De'lonta intended to manipulate her treatment—and Defendants' suggestion makes no sense: As Dr. Brown explained, Ms. De'lonta's nearly three-decades-long commitment to transitioning would militate in favor of strict compliance with her treatment regimen. If she was "manipulating" her treatment, as Defendants suggest, then her regimen was not adequately addressing her symptoms. *See* Brown Decl. ¶ 49; PI Br. 29.

[7] To be clear, Plaintiff's motion for a preliminary injunction and her motion to compel access are independent, and one is not a substitute for the other. Even if this Court were to grant the motion to compel and Ms. De'lonta is permitted to be evaluated by her own expert at her own expense for purposes of this litigation, Defendants are still required by the Eighth Amendment to have her evaluated by a competent specialist in the treatment of GID to determine her readiness for sex reassignment surgery and to determine whether her current regimen is adequate to treat her GID.

## CONCLUSION

For the foregoing reasons, the Court should order that (1) Defendants provide Ophelia De'lonta with an evaluation for readiness for sex reassignment surgery by a competent specialist in the treatment of GID; and (2) Defendants grant access to Ms. De'lonta so that she can be evaluated by her own GID specialist, at her own expense, for purposes of this litigation.

August 16, 2013

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

By:/s/ Don Bradford Hardin, Jr.
Don Bradford Hardin, Jr. (Va. Bar No. 76812)
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: bradford.hardin@wilmerhale.com

David S. Lesser, admitted *pro hac vice*
Alan E. Schoenfeld, admitted *pro hac vice*
Andrew Gale Sokol, admitted *pro hac vice*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888

*Counsel for Plaintiff Ophelia Azriel De'lonta*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of August, 2013, a true and correct copy of the foregoing Reply in Support of Plaintiff's Motion for a Preliminary Injunction and to Compel Access to Plaintiff was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

By:/s/ Don Bradford Hardin, Jr.
Don Bradford Hardin, Jr. (Va. Bar No. 76812)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: bradford.hardin@wilmerhale.com

*Counsel for Plaintiff Ophelia Azriel De'lonta*