# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Ophelia Azriel De'lonta, <br> *Plaintiff* <br><br> v. <br><br> Harold W. Clarke, *et al.*, <br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 7:11-cv-00257 <br> ) <br> ) <br> ) <br> ) |

## SECOND AMENDED COMPLAINT

Plaintiff Ophelia Azriel De'lonta alleges as follows:

### INTRODUCTION

1. This suit challenges Defendants' deliberately indifferent denial of adequate medical treatment to Plaintiff Ophelia Azriel De'lonta ("De'lonta"), in ongoing violation of De'lonta's civil rights and the terms of a 2004 settlement agreement resolving a prior action over the same subject matter (the "Settlement Agreement"). The action arises under the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the Settlement Agreement.

2. De'lonta is currently a prisoner serving her sentence at a facility operated by the Virginia Department of Corrections ("VDOC"), under the control of defendant Harold W. Clarke ("Clarke"), Director of the Virginia Department of Corrections.

3. De'lonta is a pre-operative transsexual who has been diagnosed with Gender Identity Disorder ("GID"), a condition that requires prompt and serious medical evaluation and treatment.

4. Despite acknowledging that De'lonta suffers from GID, and agreeing in the Settlement Agreement to provide continuing medical treatment for her GID, Defendants have

consistently refused to provide medically necessary treatment, including by failing to have her evaluated by a medical expert with competency in the field of GID treatment and sexual reassignment surgery ("SRS") and to promptly provide such further treatment, including SRS, as is medically indicated.

5. Defendants' failure to provide medically necessary treatment is in no way connected to a legitimate purpose and is in willful disregard of De'lonta's rights under the Eighth Amendment of the Constitution and in breach of the Settlement Agreement.

## PARTIES

6. Plaintiff Ophelia Azriel De'lonta is a citizen of the United States and is currently housed at the Buckingham Correctional Center ("Buckingham"), a prison operated by the VDOC.

7. Defendant Harold W. Clarke is Director of VDOC and its chief policy maker.

8. Defendant Fred Schilling is Director of Health Services for VDOC.

9. Defendant Denise Malone is Mental Health Director for VDOC.

10. Defendant Meredith R. Cary is Chief Psychiatrist for VDOC.

11. Defendant Larry Edmonds is Warden of Buckingham Correctional Center.

12. Defendant Major C. Davis is Chief of Security at Buckingham Correctional Center and a member of De'lonta's current treatment team.

13. Defendant Lisa Lang is a Staff Psychologist at Buckingham Correctional Center and a member of De'lonta's current treatment team.

14. Defendant Jeena Porterfield, Psychology Associate Senior was a member of De'lonta's treatment team at Powhatan Correctional Center.

15. All defendants herein are sued in their official capacities. Defendants Clarke and Cary are also sued in their individual capacities.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

17. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 because this is the district in which Plaintiff's claims arose.

## STATEMENT OF FACTS

18. De'lonta has been in the custody of VDOC since 1983, and is currently serving a 73-year sentence for bank robbery with the possibility of parole. She is currently incarcerated in the custody of VDOC under the supervision of those Defendants who work at Buckingham.

19. De'lonta is a pre-operative transgender female who has been diagnosed as suffering from GID by VDOC doctors continuously since the beginning of her imprisonment.

20. GID is a serious medical condition that requires medical care, and that causes the individual with GID significant distress in social, occupational, or other important areas of function. People with GID typically have strong cross-gender identification, meaning a conviction that one is the opposite sex, and a persistent anxiety and discomfort concerning their assigned sex.

21. The appropriate, generally accepted treatment for GID includes treatment pursuant to "Standards of Care" published by the World Professional Association for Transgender Health ("WPATH"), formerly known as the Harry Benjamin International Gender Dysphoria Association. The Standards of Care, which are based on the best available science and expert medical consensus, set forth four treatment phases, including: (1) psychotherapy; (2) hormone therapy; (3) real-life experience living as a member of the opposite sex; and (4) SRS.

22. Pursuant to the Standards of Care, after at least one year of real-life experience, including hormones, SRS is medically indicated in some individuals. Specifically, the Standards of Care provide: "While many transsexual, transgender, and gender-nonconforming individuals find comfort with their gender identity, role, and expression without surgery, for many others *surgery is essential and medically necessary* to alleviate their gender dysphoria .... For the latter group, relief from gender dysphoria cannot be achieved without modification of their primary and/or secondary sex characteristics to establish greater congruence with their gender identity." (emphasis added).

23. In 1993, while incarcerated at Greensville Correctional Center, De'lonta began receiving treatment for GID in the form of hormone therapy, which slowed hair growth, softened her skin, and caused her to develop breasts and other female characteristics. This treatment continued until 1995, when De'lonta was transferred to Mecklenburg Correctional Center and her hormone treatment was terminated pursuant to a then-recently created VDOC policy (the "Policy").

24. The Policy, outlined in a memo dated September 19, 1995, from then-VDOC Chief Physician M. Vernon Smith, provided that:

> It is the policy of the Department of Corrections [] that neither medical nor surgical interventions related to gender or sex change will be provided to inmates in the management of [GID] cases.
>
> If an inmate has come into prison and/or is currently receiving hormone treatment, he is to be informed of the department['s] policy and the medication should be tapered immediately and thence discontinued.
>
> Inmates presenting with [GID] should be referred to the institution[']s mental health staff for further evaluation.

25. In contravention of the Policy's directive that hormone treatment be tapered off, De'lonta's hormone treatment was terminated abruptly, causing her to suffer nausea, constant

itching, and depression. Additionally, De'lonta's urge to self-mutilate became increasingly uncontrollable, causing her to stab or cut her genitals on more than 20 occasions. Although she repeatedly requested resumption of the hormone therapy and treatment by a GID specialist, those requests were denied in violation of her civil rights.

26. In 1999, De'lonta filed a § 1983 suit against Dr. Smith, other Virginia prison doctors, and then-VDOC Director Ron Angelone (collectively, "the 1999 Defendants"), alleging that in violation of her Eighth Amendment rights, the 1999 Defendants had inflicted cruel and unusual punishment by denying her adequate medical treatment for her GID. She sought, *inter alia*, an injunction requiring the 1999 Defendants to arrange for her to be treated by a doctor with expertise in GID and to allow her to resume her hormone therapy until that treatment commenced.

27. The district court dismissed De'lonta's complaint for failure to state a claim. The U.S. Court of Appeals for the Fourth Circuit reversed that decision, finding that De'lonta's need for protection against continued self-mutilation constituted an objectively serious medical need under the Eighth Amendment and that De'lonta had sufficiently alleged VDOC's deliberate indifference to that need. *See De'lonta v. Angelone*, 330 F.3d 630 (4th Cir. 2003). The Fourth Circuit remanded the case for further proceedings.

28. On October 7, 2004, the district court dismissed the action pursuant to the Settlement Agreement, retaining jurisdiction to enforce the Settlement Agreement if necessary. As part of that agreement, VDOC acknowledged De'lonta's serious medical need and agreed to provide her with continuing treatment for her GID. Additionally, VDOC formally rescinded the Policy and agreed that the care of inmates with GID would "be guided by doctors experienced in the diagnosis and treatment of GID."

29. In conjunction with the Settlement Agreement, the parties agreed that Dr. Julian Brantley, a GID specialist, would be relied on "for the purpose of consultation regarding De'lonta's diagnosis and treatment." VDOC additionally agreed that should it seek a substitute for Dr. Brantley, it would advise De'lonta's counsel of the proposed substitution and provide him with the curriculum vitae of the proposed successor, who was required to have "substantial expertise in the treatment of GID."

30. Dr. Brantley never met with De'lonta for purposes of formulating a treatment plan or providing her with care. Nor did Dr. Brantley agree to treat De'lonta on a regular basis.

31. On July 7, 2005, VDOC officials received an informal treatment plan for De'lonta's care from Dr. Brantley. Relying on what are now known as the WPATH Standards of Care, Dr. Brantley recommended that De'lonta "be allowed reasonable quantities of personal care products following the same rules in place for female inmates"; "be allowed to wear female undergarments"; and "receive regular psychotherapy with a therapist who is objective and comfortable working with gender identity disordered individuals."

32. Thereafter, VDOC entered into a one-year contract with Dr. Victoria Codispoti, from May 1, 2006 through April 30, 2007; the contract was renewable for one additional one-year term. Under the contract, Dr. Codispoti agreed to assess VDOC inmates with GID symptoms and to give follow-up recommendations for the treatment of such inmates. Dr. Codispoti additionally agreed to serve as a member of the "Treatment Management Team" for each inmate diagnosed with GID.

33. After meeting with De'lonta twice in 2006 and reviewing, *inter alia*, De'lonta's institutional and medical records, Dr. Codispoti issued a report on January 15, 2007, nearly two years after Dr. Brantley drafted his initial treatment plan. Therein, Dr. Codispoti concluded that

De'lonta suffered from gender dysphoria and recommended that she be treated in accordance with the WPATH Standards of Care. Although Dr. Codispoti found that De'lonta did not meet the eligibility criteria for SRS at that time, she recommended that De'lonta receive "twelve months of continuous hormonal therapy, a real life experience [living as a woman] for approximately twelve months, [and] continued psychotherapy." She emphasized that "every effort should be made to allow this inmate to behave in a more female role, or engage in female-like behaviors."

34. In response to Dr. Codispoti's report, VDOC has provided De'lonta with limited treatment for her GID in the form of psychological counseling and hormone therapy. De'lonta, however, has not seen a GID specialist since Dr. Codispoti met with her in 2006. Nor has VDOC advised De'lonta's counsel that it has substituted another GID specialist for Dr. Codispoti, as required by the Settlement Agreement.

35. VDOC has allowed De'lonta to dress and live as a woman to a limited extent. However, in violation of Dr. Codispoti's recommendation that VDOC make "every effort" to allow De'lonta to "behave in a more female role," VDOC instituted a "behavioral plan" under which De'lonta was permitted to "earn" one "feminizing item" during each six-month period that she remained infraction-free by, for example, refraining from any attempts at self-mutilation; De'lonta was otherwise denied access to these items. VDOC has since expanded this incentive system to apply not only to items such as female cosmetics and apparel but also to medication prescribed by De'lonta's endocrinologist. That is, VDOC has withheld prescription medication from De'lonta in order to induce her to comply with VDOC's behavioral directives.

36. Notwithstanding VDOC's treatment of De'lonta with hormones and counseling, she continues to suffer from severe gender dysphoria and urges to self-castrate. Although SRS is

considered "essential and medically necessary" for some patients under the WPATH Standards of Care, VDOC has refused to have De'lonta evaluated by a GID specialist concerning her need for SRS and to provide such further medical treatment as is indicated. VDOC has insisted on this position, even though language in the settlement agreement obligates VDOC to provide ongoing treatment for De'lonta and even though she has been receiving regular counseling, hormone therapy, and has more than twelve months of real-life experience living as a woman in accordance with the WPATH Standards of Care.

37. Concerned about the care being provided to her and, in particular, Defendants' refusal to evaluate her for SRS, De'lonta has filed a series of grievances and letters with the prison. For example, on July 31, 2008, while incarcerated at Powhatan Correctional Facility, De'lonta submitted an informal complaint, stating, "Being diagno[]sed with Gender Identity Disorder it is medically ne[ce]ssary for me to be evaluated for surgery. Why is VADOC refusing to prove me with the evaluation[?]" VDOC officials responded: "Per our discussion, DOC does not provide gender reassignment surgery evals because the state will not incur the cost of the surgery." Although De'lonta appealed the decision, she was again told that VDOC would not provide the requested evaluation for financial—not medical—reasons: "you were advised in 2007 that DOC would not pay for gender reassignment surgery."

38. On June 21, 2010, De'lonta submitted an informal complaint that she was "being denied reassignment surgery, which is required for the condition I suffer from Gender Identity Disorder." A week later, De'lonta wrote: "I want appropriate response of when my sexual reassignment surgery will take place, due to I have followed requirements" made by "Dr. Codispoti gender specialist." Defendant Cary responded on July 1, 2010 that "in regards to gender reassignment surgery, I would request that you continue to work with [Defendant Lisa]

Lang in individual therapy at this time." De'lonta appealed the decision, and was told she should "continue to work with Ms. Lang in individual therapy at this time," because she had "not been scheduled for surgery" and "[t]his issue is governed by restricted policy."

39. De'lonta later complained to then Mental Health Director Robin L. Hulbert (predecessor to Defendant Malone) in a letter dated September 3, 2010, that although her treatment program had produced "growth and stability[,]" she was still feeling "imminent" urges to self-castrate.

40. On September 17, 2010, De'lonta asserted in a separate letter to Gerald K. Washington, then Regional Director for VDOC's Central Region Office, that her urges to self-castrate were particularly overwhelming immediately following her therapy sessions with Defendant Lang and asked to stop seeing her.

41. On October 1, 2010, De'lonta wrote in an emergency grievance: "per Court order, im being denied [f]eminizing items that are required for my treatment, thus causing me unwanton stress." VDOC's response stated simply that "[t]his is not an emergency."

42. Approximately one week later, De'lonta filed another emergency grievance: "im overwhelmed by uncontrollable urges ... my disorder is beyond my control. I can only ask for help." Defendants failed to provide any help, responding instead: "Please submit a request for mental health services on a inmate request form." That same day, De'lonta covered the window to her cell with a piece of paper and attempted to castrate herself with a razor, requiring emergency treatment and hospitalization.

43. Also on October 8, Defendant Clarke was appointed as the new Director of VDOC. Defendant Clarke was familiar with the issues surrounding the treatment of inmates diagnosed with GID from his prior position as the Commissioner of the Massachusetts

Department of Corrections; in that capacity, he was found to have been deliberately indifferent to the medical needs of an inmate diagnosed with GID, Sandy Battista, because he withheld treatment from Battista in violation of her Eighth Amendment rights. *See Battista v. Clarke*, 645 F.3d 449, 455 (1st Cir. 2011) (upholding district court's finding of deliberate indifference). De'lonta wrote Defendant Clarke in November 2010 to inform him that she was not receiving adequate care in compliance with the Settlement Agreement.

44. Following her attempted self-castration, De'lonta persisted in her requests for treatment and evaluation. On November 8, 2010, De'lonta submitted an informal complaint stating, "Per …Standard of Care for Gender Identity Disorder after two year real life test, final procedure sex reassignment surgery is to be performed. Im being denied sex reassignment surgery." Defendant Lang asked that De'lonta submit her request to Defendant Cary, stating "[a]pproval or disapproval of your request is beyond the scope of this institution[']s authority."

45. De'lonta made the request again, noting that she had already written to Defendant Cary, but had been told to address her concerns instead to Defendant Lang, and asking: "I want VADOC to follow the [WPATH] Standard of Care treatment procedure as I have followed the procedure to achieve sex reassignment surgery." Once again, no evaluation or other treatment was arranged by Defendants, driving De'lonta to self-mutilate a second time in December 2010. De'lonta was disciplined by Defendants for this behavior.

46. De'lonta wrote Defendant Cary and Dr. Hulbert multiple times regarding her treatment plan. Both individuals refused to provide De'lonta with any guidance as to when an evaluation with a GID specialist regarding her treatment and need for SRS would take place.

47. The continued denial of an evaluation for SRS and refusal to provide such further treatment as is medically indicated has been in willful disregard of De'lonta's rights under the Eighth Amendment to the United States Constitution and the terms of the Settlement Agreement.

48. On June 3, 2011, De'lonta filed the instant lawsuit *pro se* in federal district court in the Western District of Virginia alleging that, in light of Defendants' knowledge of her ongoing risk of self-mutilation, their continued refusal to have De'lonta evaluated for SRS and ultimately to provide that treatment constitutes deliberate indifference to her serious medical need in violation of the Eighth Amendment. On screening pursuant to 28 U.S.C. § 1915A(b)(1), the district court dismissed the complaint without prejudice for failure to state a claim upon which relief could be granted. *De'lonta v. Johnson*, No. 7:11-CV-00257, 2011 WL 5157262 (W.D. Va. Oct. 28, 2011).

49. On appeal, the Fourth Circuit reversed the district court's decision, finding that De'lonta had stated a plausible Eighth Amendment claim and that Defendants "have, at all relevant times, been aware of De'lonta's GID and its debilitating effects on her." *De'lonta v. Johnson*, 708 F.3d 520, 525-526 (4th Cir. 2013).

### COUNT I:
**Denial of Adequate Medical Treatment with Deliberate Indifference to a Serious Medical Need in Violation of the Eighth Amendment**

50. De'lonta repeats and realleges the allegations of paragraphs 1 through 49 as if fully set forth herein.

51. De'lonta has a serious medical need for prompt evaluation and treatment in accordance with the discretion of her treating physicians and medical personnel, including the recommendations of consulting physicians experienced in the treatment of GID.

52. De'lonta's serious medical need has not been treated and she has been denied full treatment, including SRS.

53. Defendants have been deliberately indifferent to De'lonta's serious medical needs and have denied her evaluation and treatment for reasons that are unrelated to her medical needs or to legitimate security concerns. Defendants know that medical experts consider De'lonta to be at risk for serious medical harm and have knowingly disregarded that risk.

54. Defendants' denial of medically necessary care for De'lonta is deliberately indifferent to her serious medical needs and constitutes cruel and unusual punishment in violation of De'lonta's rights under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.

55. De'lonta faces a substantial and imminent risk of serious medical harm.

## COUNT II:

### Breach of the Settlement Agreement

56. De'lonta repeats and realleges the allegations of paragraphs 1 through 55 as if fully set forth herein.

57. Defendants have failed to rely on doctors experienced in the diagnosis and treatment of GID for purposes of caring for De'lonta.

58. Defendants have similarly failed to set forth treatment plans for De'lonta in accordance with what is determined to be medically necessary by qualified specialists.

59. Defendants' acts are in violation of its 2004 Settlement Agreement with De'lonta.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter relief as follows:

60. Enter injunctive relief against the defendants enjoining them to provide adequate medical care to De'lonta, including SRS;

61. Award damages against Defendant Clarke in the amount of $50,000;

62. Award damages against Defendant Cary in the amount of $50,000;

63. Award reasonable fees and costs to Plaintiff's counsel under 42 U.S.C. § 1988; and

64. Award such other relief as shall be required in the interests of justice.

DATED this 27th day of January, 2014.

Respectfully submitted,

By:/s/ Don Bradford Hardin, Jr.
WILMER CUTLER PICKERING
HALE AND DORR LLP
Don Bradford Hardin, Jr. (Va. Bar No. 76812)
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: bradford.hardin@wilmerhale.com

David S. Lesser, admitted *pro hac vice*
Alan E. Schoenfeld, admitted *pro hac vice*
Andrew Gale Sokol, admitted *pro hac vice*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 230-8800
Fax: (212) 230-8888

*Counsel for Plaintiff Ophelia Azriel De'lonta*